Tuesday                    2nd

June, 1998.


John Edward Watkins, s/k/a
 John Edward Watkins, Sr.,                              Appellant,

 against        Record No. 0936-96-3
                Circuit Court No. CR95007076

Commonwealth of Virginia,                               Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Baker, Benton,
Coleman, Willis, Elder, Bray, Annunziata, Overton and Bumgardner

James Hingeley, Public Defender, for
appellant.

Richard B. Smith, Assistant Attorney General
(Richard Cullen, Attorney General, on
briefs), for appellee.


By opinion dated October 14, 1997, a panel of this Court reversed the conviction of John Edward Watkins for feloniously operating a motor vehicle after having been adjudicated an habitual offender.  The Commonwealth's petition for rehearing en banc was granted and heard on April 23, 1998.  Upon rehearing, the opinion previously rendered on October 14, 1997 is withdrawn, the mandate entered on that date is vacated and we affirm the conviction.

The panel held that the trial court erred in refusing to compel the Commonwealth to uphold a conditional plea agreement.  Upon rehearing, we hold the plea agreement became ineffectual when the district court allowed the Commonwealth to nolle prosequi the charges due to the failure of a witness to appear.  "When the trial court

enters a nolle prosequi of an indictment, it lays 'to rest that indictment and the underlying warrant without disposition, <u>as though they had never existed</u>.'" <u>Burfoot v. Commonwealth</u>, 23 Va. App. 38, 44, 473 S.E.2d 724, 727 (1996) (quoting <u>Arnold v. Commonwealth</u>, 18 Va. App. 218, 222, 443 S.E.2d 183, 185, <u>aff'd en banc</u>, 19 Va. App. 143, 450 S.E.2d 161 (1994)). "After a nolle prosequi of an indictment, the slate is wiped clean, and the situation is the same as if 'the Commonwealth had chosen to make no charge.'" <u>Id.</u>

The entry of the nolle prosequi terminated the original charges, as well as Watkins' conditional plea agreement, as if they had never existed. When the Commonwealth subsequently brought a new indictment, it was "a new charge, distinct from the original charge or indictment." <u>Arnold</u>, 18 Va. App. at 221, 443 S.E.2d at 185. Therefore, the Commonwealth was not bound by the prior plea agreement, and the said conviction is affirmed. Appellant's conviction of driving while intoxicated remains unchanged.

For the reasons stated in the panel's opinion, <u>see</u> <u>Watkins v. Commonwealth</u>, 25 Va. App. 646, 491 S.E.2d 755 (1997), Judges Benton and Annunziata would reverse the conviction.

The Commonwealth shall recover of the appellant the costs in this Court, which costs shall include a fee of $925 for services rendered by the Public Defender on this appeal, in addition to counsel's necessary direct out-of-pocket expenses, and the costs in the trial court.

This order shall be published and certified to the trial court.

Costs due the Commonwealth
 by appellant in Court of
 Appeals of Virginia:

    Public Defender     $925.00   plus costs and expenses


                         A Copy,

                             Teste:

                                 Cynthia L. McCoy, Clerk

                             By:

                                 Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Annunziata and Senior Judge Duff
Argued by Teleconference

JOHN EDWARD WATKINS, S/K/A
 JOHN EDWARD WATKINS, SR.

OPINION BY
v.   Record No. 0936-96-3       JUDGE ROSEMARIE ANNUNZIATA
                                OCTOBER 14, 1997
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Richard S. Miller, Judge

James Hingeley, Public Defender, for
appellant.

Richard B. Smith, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


Appellant, John Edward Watkins, s/k/a John Edward Watkins, Sr., appeals his conviction for feloniously operating a motor vehicle after having been adjudicated an habitual offender.[1]  He contends that the trial court erred in refusing to compel the Commonwealth to uphold its agreement to reduce the charge to a misdemeanor offense.  We agree and reverse his conviction.

I.

On July 10, 1995, appellant appeared in general district court for a preliminary hearing on the felony charge of driving after having been declared an habitual offender and for trial on a misdemeanor charge of driving while intoxicated.  Before the cases were called, the Assistant Commonwealth's attorney informed

---

[1]Appellant was also convicted of driving while intoxicated.

appellant's counsel that she did not have a copy of the order adjudicating appellant an habitual offender and that she would like a continuance. Plea negotiations ensued, and the resulting agreement followed: appellant promised not to oppose the Commonwealth's request for a continuance, and the Commonwealth promised to reduce the habitual offender charge from a felony to a misdemeanor, to which appellant would then plead guilty. Appellant also agreed to plead guilty to driving while intoxicated.

Appellant stood silent, as the Commonwealth requested, and the trial court granted a continuance. When the hearing reconvened on August 2, 1995, appellant was prepared to plead guilty to the misdemeanor habitual offender charge and to driving while intoxicated. The Commonwealth, however, represented by a different attorney, refused to reduce the habitual offender charge and announced its intent to prosecute the felony offense.

The trial court rejected appellant's motion to compel the Commonwealth to reduce the charge in accord with the prior agreement, finding that

> until the Defendant is substantially
> prejudiced, . . . there is no agreement
> enforceable by the Defendant with the
> Commonwealth. And, in fact, the Commonwealth
> can withdraw its agreement at any time up
> until that point.

Appellant pled not guilty, was tried by the court, and was convicted.

II.

Under the terms of the parties' agreement, the Commonwealth promised to reduce the charge against appellant from a felony to a misdemeanor in exchange for appellant's promise not to oppose the Commonwealth's request for a continuance and to plead guilty to two misdemeanor offenses. Appellant performed all that was required of him by the agreement prior to the Commonwealth's obligation to perform. The Commonwealth failed to perform. The issue on appeal is whether the trial court erred in refusing to compel the Commonwealth's performance. Under the facts of this case, we hold that the trial court erred, and we reverse appellant's conviction.

The principles which guide our decision are "an amalgam of constitutional, supervisory, and private [contract] law concerns," which comprise a body of law unique to plea bargaining. United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986). While plea bargains are analogous to commercial contracts, they do not demand strict application of the common law principles of contract. See, e.g., id.; United States v. Mozer, 828 F. Supp. 208, 215 (S.D.N.Y. 1993); State v. Brockman, 357 A.2d 376, 383 (Md. App. 1976); see generally, William M. Ejzak, Plea Bargains and Nonprosecution Agreements:  What Interests Should Be Protected When Prosecutors Renege?, 1991 U. Ill. L. Rev. 107 (1991); Lawrence K. Rynning, Note, Constitutional Recognition for Defendant's Plea Bargaining

Expectations in the Absence of Detrimental Reliance, 58 N.C.L. Rev. 599 (1980). "The rigid application of contract law to plea negotiations would be incongruous since, for example, the trial court is not ordinarily bound by the compact and [the government] cannot obtain `specific performance' of a defendant's promise to plead guilty." Brockman, 357 A.2d at 383. Furthermore, rigid application of contract principles is tempered by the fact that "the defendant's underlying `contract' right is constitutionally based and, therefore, reflects concerns that differ fundamentally from and run wider than those of commercial contract law." Harvey, 791 F.2d at 300. Moreover, underlying any criminal prosecution are concerns for the "`honor of the government, public confidence in the fair administration of justice, and the effective administration of justice.'" Id. (quoting United States v. Carter, 454 F.2d 426, 428 (4th Cir. 1972), cert. denied, 417 U.S. 933 (1974)).

"The prevailing doctrine is that `the State may withdraw from a plea agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement.'" W. LaFave & J. Israel, Criminal Procedure § 20.2(e) (1984) (quoting Shields v. State, 374 A.2d 816 (Del.), cert. denied, 434 U.S. 893 (1977)); see also, e.g., Virgin Islands v. Scotland, 614 F.2d 360, 365 (3d Cir. 1980); United States v. Savage, 978 F.2d 1136, 1138 (9th Cir. 1992), cert. denied, 507 U.S. 997 (1993);

United States v. Gonzales, 918 F.2d 1129, 1134 n.2 (3d Cir. 1990), cert. denied, 498 U.S. 1107 (1991). The decision to compel enforcement of the agreement, in other words, is determined according to the action taken by the defendant, if any, in reliance on the agreement.

When a defendant enters a plea of guilty in reliance on an agreement with the government, enforcement of the agreement will be compelled. Santobello v. New York, 404 U.S. 257, 264 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); Johnson v. Commonwealth, 214 Va. 515, 517-18, 201 S.E.2d 594, 596 (1974); Jordan v. Commonwealth, 217 Va. 57, 58-61, 225 S.E.2d 661, 661-64 (1976); Jones v. Commonwealth, 217 Va. 248, 256, 227 S.E.2d 701, 706-07 (1976).[2]

When a defendant has taken no action in reliance on the agreement, however, the contrary result obtains. An offer by the government alone, even if accepted by the defendant under common law contract principles, does not require specific enforcement of the agreement. See Mabry v. Johnson, 467 U.S. 504, 507-08 (1984)

_____

[2]Indeed, a defendant's "detrimental reliance" is manifest when he or she enters a plea of guilty pursuant to an agreement with the government because "the entry of a guilty plea is a waiver of certain constitutional rights . . . [including] the Fifth Amendment right against compulsory self-incrimination, the Sixth Amendment right to trial by jury, and the Sixth Amendment right of confrontation." See, e.g., Gardner v. Warden, 222 Va. 491, 493-94, 281 S.E.2d 876, 877 (1981).

("A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest.  It is the ensuing guilty plea that implicates the Constitution."); People v. Heiler, 262 N.W.2d 890, 895 (Mich. App. 1977) ("To hold the prosecutor bound by the agreement under [such circumstances] would . . . actually inhibit the dispositional use of plea bargaining by placing the prosecutor at an absolute disadvantage.").  Enforcement is not compelled absent some performance by the defendant because, under such circumstances, the defendant's right to trial by jury remains a sufficient remedy to the government's withdrawal of the agreement.  Indeed,

> [the] fundamental right [to trial by jury] would be belittled if [it were] held [] to be an insufficient "remedy" or result for a defendant who has not been induced to rely on the plea to his detriment.  The prosecutor is under no duty to plea bargain if no offer is made, and the defendant is entitled to trial. There is no rational basis for holding, in essence, that a trial is sufficient for the defendant who has not been offered a plea and insufficient for the one who has.

Virgin Islands v. Scotland, 614 F.2d 360, 365 (3rd Cir. 1980).

A middle ground exists when the defendant, although not having pled guilty, has taken some "other action" pursuant to a plea agreement.  In such a case, the full panoply of constitutional protections attending a plea of guilty does not

attain, yet, the agreement cannot be dismissed as executory when the defendant has acted in accordance with the terms of the agreement.  The issue is what "other action" taken by the defendant, short of pleading guilty, compels enforcement of the agreement.

Some courts hold that enforcement of the agreement should be compelled only where the defendant's performance implicates his or her constitutional rights.  See, e.g., People v. Navarroli, 521 N.E.2d 891, 895 (Ill. 1988) (agreement not enforced because defendant's cooperation in informing police with respect to ongoing drug transactions did not implicate constitutional right).  We disagree with that position because, as stated above, a defendant's constitutional rights are not always, necessarily, the basis for compelling enforcement of plea agreements.[3]

---

[3]We recognize that the procedural posture of a case may demand that enforcement be determined in strict adherence to constitutional principles.  See Mabry, 467 U.S. at 507 (where defendant could "obtain . . . relief only if his custody is in violation of the Federal Constitution").  Our decision here, however, is not constrained by such principles.

In addition, we note that the performance necessary to implicate the constitution as a vehicle for enforcing a plea agreement has received varying interpretation.  Some courts have held that the constitution requires enforcement only where a defendant enters an involuntary plea in reliance on the agreement.  See United States v. Coon, 805 F.2d 822, 825 (8th Cir. 1986).  Under that theory, even cooperation with the government that leads to incriminating statements does not implicate the constitution, because incriminating statements can simply be suppressed at trial.  See id. Other courts have held that the constitution requires enforcement only when a defendant waives a constitutional right in reliance on the agreement.  See Navarroli, 521 N.E.2d at 895 (agreement not enforced because defendant's cooperation in informing police with respect to ongoing drug transactions did not implicate constitutional

Rather, the decision to compel enforcement is guided by "an amalgam of constitutional, supervisory, and private [contract] law concerns." Harvey, 791 F.2d at 300. See also Navarroli, 521 N.E.2d at 899 (Clark, J., dissenting) (criticizing majority for failing to look beyond constitutional implications of defendant's performance to enforce agreement on other grounds); Workman v. Commonwealth, 580 S.W.2d 206, 207 (Ky. 1979), overruled on other grounds, 817 S.W.2d 218 (Ky. 1991) ("If the government breaks its word, it breeds contempt for integrity and good faith. It destroys the confidence of citizens in the operation of their government and invites them to disregard their obligations. That way lies anarchy. We deal here with a `pledge of public faith--a promise made by state officials--and one that should not be lightly disregarded.'"); see generally Rynning, supra, at 606-07 (Examples of detrimental reliance requiring enforcement of an agreement have included: "[p]roviding information to government authorities, testifying for the government, confessing guilt, returning stolen property, making monetary restitution, failing to file a motion to have charges presented to a grand jury, submitting to a lie detector test and waiving certain procedural guarantees.") (citations omitted).

right). Yet other courts hold that enforcement on constitutional grounds does not require a defendant's reliance on the agreement to implicate constitutional rights. See People v. MacRander, 756 P.2d 356, 360-61 (Colo. 1988) (waiver of preliminary hearing in reliance on agreement sufficient to require enforcement of agreement).

Guided by such principles, we hold that where a plea agreement calls for performance by the defendant and the defendant has performed pursuant to the terms of the agreement, the agreement will be enforced.[4]  We find no authority to support a qualitative analysis of a defendant's performance and find, instead, that the terms of the parties' agreement best define their respective performance obligations.

In the present case, appellant did not enter a guilty plea in reliance on the plea agreement; thus, his reliance on Santobello, Johnson, Jordan, and Jones is misplaced.  This is not a case, however, where the government sought to withdraw an agreement that consisted solely of an exchange of executory promises upon which the defendant had not acted.  Cf. Mabry, 467 U.S. at 507-08; Heiler, 262 N.W.2d at 892.  Rather, this case presents the middle ground.  Here, because appellant had fully performed his obligation under the terms of the agreement, he was entitled to have the agreement enforced.

Accordingly, we reverse appellant's conviction on the habitual offender charge[5] and remand for further proceedings

---

[4]We reject the Commonwealth's suggestion that a plea agreement has no legal significance until it is accepted by the court pursuant to Rule 3A:8(c)(1).  That contention is contrary to the vast weight of authority on the subject and ignores the heart of the issue in these cases:  the government's fair treatment of criminal defendants during the course of plea bargaining.

[5]The appellant's conviction on the DWI charge remains unchanged by this decision since the Commonwealth's failure to perform its part of the agreement had no detrimental effect on appellant with respect to this charge.

consistent with this opinion.

<u>Reversed and remanded.</u>